Case number 24-7168. Eric Flannery and Rick Flannery Restaurant LLC trading as Big Board Appellants versus Mark Eckenwiler in his personal capacity et al. Mr. Rosenthal for the Appellants, Mr. Mendez for the Appellates. Good morning, Your Honor. May it please the Court, David Rosenthal on behalf of Eric Flannery and the Big Board Restaurant. I'd like to reserve three minutes for rebuttal. Mr. Flannery exercised the quintessential First Amendment right of criticizing government policy. He spoke out on social media, gave interviews, filed a lawsuit, and engaged in civil disobedience to express his views. The neighborhood commissioners took notice. In response to Mr. Flannery's speech, Defendant Eckenwiler said, quote, some of the things he said publicly we should go ahead and protest the license. Those are Defendant Eckenwiler's own words specifying the specific form of retaliation the commissioners would take because of what Mr. Flannery said. Two days later, the full commission voted in lockstep to do just that. The district court agreed that plaintiffs alleged the first two elements of a First Amendment retaliation claim, finding some protected expression and retaliation in the form of what the district court found to be a, quote, flimsy and unsupported liquor license protest. But that court dismissed at the pleading stage on causation. Under Mt. Healthy's substantial factor causation standard, the court erred by excluding Mr. Flannery's speech as a substantial or motivating factor for defendant's retaliation and miscategorized other protected expressions. For both of those reasons, the dismissal should be reversed. Well, let's think about the temporal proximity of the statements when you first exercise in the First Amendment rights, and then there's a suspension, and then there's a renewal. Because it looks like the district court is saying that the arguments are flimsy based on the fact that there was a violation of the mandate for the mask and the vaccine. So help us get to but for in terms of the district court's analysis, because the district court doesn't seem to think that there's a but for cause. There are a few responses on that, Your Honor. First, temporal proximity helps us. The Hamilton case from this court, 666-3D-1344, talks about temporal proximity. There, a delay of multiple months between an expression and a retaliatory act still was sufficient to give rise to an inference on causation. We also have the district court finding it to be flimsy and unsupported, not just based on the timing or anything else, but because the commissioners don't have the authority to pursue any consequences or actions against Mr. Flannery and the big board for the conduct that they pointed to. The commissioner's power is very different than that of, say, the mayor's office and the executive agencies who are allowed to enforce D.C. health code. There are only three statutory grounds on which a renewal application can be protested. We see those in the D.C. code at section 25-313. They cited those three sections, and the district court didn't find any of them persuasive by saying that the protest of the liquor license was flimsy and unsupported. We also know that on the eve of a hearing where Eckenweiler and the co-commissioners were supposed to go before an adjudicator and have this protest heard, they decided to withdraw it. It seems like the reasonable inference that one can glean from that is because there is no substantiated, no valid justification for that protest. Let me ask you about the legal standard. You referenced Mount Healthy. It obviously has this burden-shifting standard. How would you describe what you think a plaintiff's burden at the pleading stage is? Is it motivating factor? Is it but-for? Or is it something else? At the pleading stage, I think it's motivating factor, substantial factor causation. I think both substantial and motivating factor directly from Mount Healthy. We see those in Gonzalez. We see those in Neves. We see those in several cases. It seems similar as well to the McDonnell Douglas burden-shifting framework, where at the pleading stage, it's up to the plaintiff to show that the retaliatory speech or some protected expression was, in fact, a substantial motivating factor for the retaliation. But those arguments might be good arguments. But are you familiar with the Ways and Means Committee decision from 2022? We also have another case called Scahill that recited the standard in a case like this at the pleading stage as being to establish a plausible inference or but-for causation. And if you are familiar with them, is there some way you would have us distinguish those cases? I think a couple of responses on that, it seems like these cases will often say a but-for causation, preserving the idea that there can be multiple substantial or motivating factors that satisfy causation. We see that in the Clark case from the circuit. Also, several of those cases cited in my friend's brief are all at the summary judgment stage where the court's able to weigh evidence, make credibility determinations. Ways and Means Committee case is on a motion to dismiss. And it says if it is evident from the complaint that the defendant would have taken the action, even absent the protected activity, the complaint is dismissed, even if it's a motivating factor. I think at the very least, we don't have that, Your Honor, because what's in the complaint are only statements from defendants pointing to a retaliatory motive for the protest. So there's certainly nothing within the four corners of the complaint that can absolve the commissioners of that retaliatory motive. And I think that the Sixth Circuit dealt with this fairly extensively in Cooperrider, the case that we cited at the beginning of our opening brief. In footnote 13, it talked about the pleading standard. Cooperrider there was required only to plausibly allege that his speech was a motivating factor for the enforcement action. And whether or not the action would have been taken in the absence of his speech was, therefore, a quintessential fact question to be inquired into during the discovery process. Yeah, so if we just thought about it, it seems like you would say this is not one of those cases. But there could be cases where it's just sort of indisputable that even though the protected speech was a motivating factor, the government was still going to take this action against the plaintiff even absent that speech. And it does seem like however we articulate this standard should account for that possibility, right? Perhaps it's possible in a different case based on the four corners of the complaint that defendants could carry their burden of showing that there is a valid investigation. You could plead yourself out of court basically by including another. In the Ways and Means Committee case, there was a statute that required, that's what our opinion said, required the action that they claimed was retaliatory. And so we would dismiss because it's basically maybe the way to think about it is it's implausible that the defendant won't be able to show it would have taken the action anyway, something like that. Perhaps in a case like that, again, as you mentioned, that's not this case in here. Even if we carry our burden on showing a substantial motivating factor, could the government show that the but-for causation or that the only causation was a non-pretextual reason or a valid justification? I think then we get into weighing the evidence and that's much more appropriate for summary judgment in this particular case. On harm, the harm alleged is harm to reputation, emotional distress, the expense of offending, the licensing challenge, and a violation of First Amendment rights. Can you tell me more about those? Like harm to reputation, it seems like that Mr. Flannery is openly stating his position to the extent that the ANC is highlighting it at all. I mean, I'm not sure what harms his reputation. Eckenweiler is in a public back and forth about attitudes about masking. You're not claiming there's a harm to reputation to Mr. Flannery or his restaurant from that? It's possible, Your Honor. I think there are a few different harms he articulated there. One on harm to reputation, because this commission only has three statutory bases on which they can lodge a protest, the idea that Mr. Flannery is reducing real property values or hurting the peace, order, and quiet of the neighborhood. I think that harms his reputation, the big board's reputation, in ways that aren't supported by the facts of this case. If I live near a bar in a pandemic that was drawing a lot of people who were not interested in being vaccinated or masked, I might think that affected my property values. I might not want to from places where people were congregating who might carry contagion. So, I'm not sure that that's a reputational injury. But I take your point that to the extent that there's some suggestion by the ANC that the big board is not in compliance more generally with traffic. So, that's the basis for the reputational harm. Right. That's at least one of them. It sounds like there'd be a lot of factual inquiry on why people moved or how the neighbors felt. Emotional distress. Well, the question whether freestanding it's a harm to reputation just as a statement is, you know, this jumped further. Emotional distress to Mr. Flannery. He had to endure going through the protest process, looking at the other ones. He had to hire a lawyer. What did that involve? I mean, the protest process is like if a citizen could just raise something and the ANC could, the alcohol, is it ABCB? The name recently changed. The ABCB Alcohol Board. So, is the ABCB doing an investigation that it finds doesn't affect a license? Is that, that's harm? It could be. I think important on that note, Your Honor, your average citizen couldn't just show up and file a protest nor be given the same weight as one filed by the commission. There are only a select few people who have standing to file these petitions. That's DC code section 25609 where the ANC has a body, has a standing, or a small number of conjoining neighbors who fit these particular categories. So, one citizen couldn't show up and launch this protest and couldn't make Flannery endure the consequences. Adjoining neighbors could. A certain number if they satisfy the statutory requirement, but they still wouldn't be given great weight to their recommendation, which only the ANC is by statute. And there's no, there's no separate, the violation of the statute. You know, we have Kerry versus Pifus, which is the importance of the constitutional right alone is not, you know, compensable, but this is a distinct claim of harm. You have the chilling effect on speech because if the government's threatening to take away someone's livelihood, as we saw in Cooper Rider, that's a significant harm, a significant threat that could kill both Flannery and other speech. You also have, I suppose, the issue of having to go through the protest process and have to hire a lawyer, pay the pocketbook expense, which is a classic standing injury. Did the, is there an allegation that there was a lawyer hired or time spent on this process? I thought the ABCB sent people out and just said that there's to this. Is there behind the scenes more that goes on? Well, if this happened, I don't have the record side off the top of my head, but I know in the complaint, we did allege that there were legal expenses that Mr. Flannery had to pay. He had to hire a lawyer to engage in the mandated mediation process that the alcohol bar requires that Mr. Eckenweiler, we allege, skirted and wouldn't participate in. But Flannery, in good faith, followed the rules, hired a lawyer, participated in that, showed up to board hearings, including the committee meeting that we cite from November 7th. And he also, as you mentioned, the investigators at the time called ABRA went out, staked out his property eight times. He had to deal with government officials and investigators at his property eight times within a month, and they found no violations of any of the bases for the protest, which again goes back to the pretext argument. And when you say had to deal with, what do you mean? Having non-patrons on his property there to investigate alleged violations to the extent he had to open up his kitchen or open up his restaurant to government investigators, taking up space that patrons otherwise could use. Perhaps having a squad of government agents around could have a chilling effect on people going to any sort of restaurant. We see that in other contexts quite often. So all of those reasons hurt his business and his business interests. So on the causation point, your brief insists a number of times that disobeying the vaccination and mask mandate is protected speech. And my understanding of the law is that that's not protected speech, except insofar as the action is targeting its message. And that's O'Brien. The reason it's called civil disobedience is because it's disobeying the law. And civil disobedience is actually not First Amendment protected. That's a letter from Birmingham jail. People go to prison for civil disobedience, which is part of why it's powerful. They can, but only when government agents who have the authority to impose consequences for that conduct are the ones who actually do it. If the police are allowed to arrest someone, then just because someone was engaging in civil disobedience when they were arrested doesn't. Right. But they're allowed to take action against a restaurant if it's in violation of the law. It's only if the reason that the ABCB is acting or the ANC 6C is acting is not because of the law violation, but because of the message. And this is like, you know, you can have laws against, you know, open fires. But the reason the Texas versus Johnson law against flag burning is because it was singling out a kind of fire for its message. But we don't have that here. We don't have the law on its face singling out for message. And so the fact that the license, for example, was suspended initially because of noncompliance, admitted overt noncompliance with the law, that's speech protected, is it? Seems like we have two different scenarios here. We have the Executive Enforcement Agency, D.C. Health, who can and did punish the big board for its disregard of the mayor's orders. That's why the big board paid a fine. That's why it was shuttered initially. D.C. Health has that authority. No one, not even my friend on the other side, has suggested that this commission has the authority to investigate or file a protest for the speech. What I'm trying to sort of focus in on is all that activity, which even in your brief to us, you characterize as protected speech. And that just seems to me to be a misunderstanding of the First Amendment law, unless it's being targeted because of the message. So setting that aside, the thing you point to, I think correctly focusing on, is the comment by Commissioner Eckenweiler that some of the things that he said, this one line that he said at the committee meeting on November 7th. And there's no allegation in the complaint that any other commissioners were at that meeting. I guess two responses there. First, just thinking quickly about the conduct, we do have Commissioner Eckenweiler talking about that Flannery was conveying a message by so-called, quote, flouting the vaccine mandate, that that was an anti-vaxxer dog whistle, according to Eckenweiler. That conveys a message, so there was an expressive component there. We know at least that Eckenweiler understood it that way. Courtney also pointed to Flannery's comments, to Flannery's conduct, excuse me, as a basis. Yeah, but looking just at the speech wrong, which I think makes this an easier case. Just looking at the Eckenweiler comment, where he says, because of what he said, and again, it's agnostic, it could have been because of what he said about not respecting the law. But this is at the complaint stage, so we draw reasonable inferences in the plaintiff's favor. So he said, because of his speech, let's not renew his license. And this is in November. And what I'm asking is, there's no allegations that other commissioners were at that meeting. We know that Courtney was there, because at Appendix 9, Paragraph 11, that's when Courtney said that the bad behavior in recent years should be a justification to file the protest. So we knew Courtney was there. We don't have a complete record of who was at this meeting, because although D.C. law requires under its open meeting law that the commission keep this record, preserve a transcript, and make that available, there was none available here. That seems to be a spoilation issue. Again, if it's not there and we're not able to confirm, even though they had an obligation to let us know who was there and what they were talking about, it seems like that at least gives rise to the reasonable inference that it's because they were talking about an impermissible motive. And Mr. Flannery was at that meeting. Correct. He joined via WebEx, yes. But may not have recognized ANC members. I don't know. The record doesn't say whether he knew the appearance of all the ANC members or whether there were name tags or not. Again, if we had that transcript, if we had that recording, we would know D.C. had the obligation to preserve it, but it's not available. And then the plaintiff alleges that the ANC stated reasons for protesting a license were negative impact on property values, peaceful and quiet, residential parking needs. Taken on their face, you don't dispute that those are legitimate reasons not facially directed at speech. If true, I would understand that the D.C. Code says that those are three reasons that you could protest a license. The D.C. Code says that. What I asked you is you would concede that those are not facially speech-based. Sure. If they're supported by justification, which here they're not. Even then, they would not be facially speech-based. I know you've alleged that they're pretextual. Right. Right. But that's your burden to show that they're pretext. So they're facially on their face. Those are perfectly legitimate reasons. Yeah, although I think that flips the burden, if I may, Your Honor. Well, it's your burden to show pretext. To show a substantial causation. It's the other side's burden to show at the pleading stage that it was for a valid justification that the government actions would have been taken even without the protected speech. Well, it's first your burden to show that speech was a substantial motivating factor. I think you established that when you got up at the podium. Yes. Okay. So it's your burden to show substantial motivating factor. It's not our burden at this stage to rule out every possible. Right. I don't think I said that. So it's your burden to show that. There are six commissioners, and what is the allegation that four of them were even aware of the comment that Mr. Eckenweiler made at the committee meeting? It's reasonable to assume that all the commissioners were present at the committee meeting, even though we don't have that record. It's reasonable to assume that they would appear. They all then presumably heard Eckenweiler say, for this reason, we should protest the license. They all voted in lockstep two days later to, in fact, protest the license. That protest, according to the district court's finding, was unsupported and flimsy. ABRA, the investigatory unit, went out and looked at the Big Board eight times, found no evidence of any of those violations. So it seems like the vote in lockstep two days after the comment, as well as the fact that there was no justification for it, as well as the withdrawal of the protest on the eve of the hearing, all supports the reasonable inference at the pleading stage that they were aware of statements that Eckenweiler was pointing to, especially as he was the lead commissioner on the protest, and they voted consistent with that recommendation, which is the retaliation problem. So do we know that the entire commission attends all the committee meetings? Like, when I was on a faculty, committees were usually a subpart of the body and would bring things to the body. So do we know that the – is it fair to assume, as you suggested, that the entire commission membership was at the committee meeting? I think it's reasonable to assume that they were, particularly without a record of showing who it was when D.C. didn't keep that record. And to the extent in Discovery, we were able to find out who was there. I think that would be a very relevant fact. At the very least, we know Eckenweiler was there, and Courtney made the bad behavior comment at that meeting before filing the protest. So we know that multiple commissioners were there, and it's reasonable, then, that they were influenced by Eckenweiler's statement. Whether they were there or not, they still appointed him the lead commissioner and voted in lockstep. The panelists here? Where is the allegation – so I had read this, that there's a first meeting where Eckenweiler makes his statement, and a second meeting where they actually vote on the protest. That's correct. And I thought the allegation was that Courtney's statement about bad behavior was made at the second meeting. I don't know that we could know that, because there wasn't a record of what was said at the seventh. It seems like we do at least know, based on paragraph 11, that it was before the protest was filed. The only thing we have within the four corners of the pleading about what happened before the protest was filed was on that November 7th meeting, where Eckenweiler made his first speech, we should protest the license comment. That was the only one that Mr. Flannery was at. But I'm reading the complaint actually the same way that Judge Garcia is suggesting, which is that he pushed the ANC to vote and file the protest, and the vote happened at the actual ANC meeting on the 9th. We know the vote happened on the 9th. Perhaps even if the record is unclear as far as when we know he pushed for it to the ANC, a clear record, thanks to factual discovery, that had meeting minutes or a record of that November 7th hearing would illuminate exactly what was said when. We know that both of them expressed that retaliatory motive before the vote, whether it was on the 7th or the 9th of November. Is there an allegation in the complaint about who the members of the Alcoholic Beverage Licensing Committee are? I'm standing here at the podium. I do not recall whether or not they are identified. It seems like their identity became less relevant when the Commission withdrew the protest on the eve of that Alcohol Board hearing. So we don't, they weren't forced to vote on the protest. However, they would have been the adjudicatory body, and they're the ones who send out. The filing of the protest was voted on by the entire ANC 6C, right? That's correct, unanimously. Well, the appellees are arguing there's nothing expressive about violating emergency orders because you have to have the observer understand what was intended by the message. So what are you suggesting is conveyed when you disregard a mask or a vaccination mandate? First, in the previous call, we don't necessarily need that because we have the speech. But if we're just looking at the expressive conduct prong, it seems that Mr. Flannery's conduct conveyed a message because Eckenweiler told us so. He said it at paragraph 35 that he understood the big board's conduct to flat the vaccine mandate to be anti-vax or dog whistling. That dog whistling is a communicative message. And under Hurley, it doesn't matter that the specific intended message is communicated, but just that a message is communicated. It seems like also in the cultural context that we find it, as we cite several examples in our opening brief at page 21, our reply brief at page 12, that the public writ large understood decisions around masking and checking vaccination cards to be a form of political protest or to be a political statement. So we typically—sorry, please. Oh, that's okay. But do we need to look at context? For example, let's say you have an employer who's in the square building and they have a mandate. If you walk into that building and you're not wearing a mask, you're not vaccinated, is that mere fact, you protesting and that being your expressive conduct in that regard, that that automatically means that you're against masking and vaccination just because you walked into the building where an employer has that mandate? Should we just make that assumption? It seems that in Congress, it was taken as much. Several congressmen were fined for doing just that. Even so, here's the big board's conduct. But I guess what I'm trying— The fact that they were fined doesn't make it expressive. It makes it a violation of the  And what I'm getting at is you could have walked into that building not wearing your mask because you have a religious reason for not doing so, you have a medical reason for not doing so, and the same thing with the vaccination. So just merely walking in, is that necessarily expressive conduct? Well, that's theoretically possible. Again, we're at the pleading stage, and here's the big board's conduct that's at issue. It's not one person walking in without a mask. It's the decision not to check vaccine cards and not to impose that masking requirement throughout the restaurant where there were potentially dozens of folks all similarly situated that would have conveyed a message to the outside, and at least it conveyed a record that it specifically communicated to have. We would typically ask—I think you've agreed with this, basically—which is you look at the conduct and you ask whether a reasonable observer would understand that they're intending to communicate something. Yes. Step two, they don't. It's an analysis. So how do you conceive of the conduct? Because one way of thinking about this is that our observer would just be sort of on the street and see a restaurant with a bunch of people without masks, and they might not even know that's due to any conscious decision by the restaurant. Even if that is possible, it seems hard to know what the public might think without statistics, without surveys, which aren't necessary at the pleading stage. But here we know that Eckenweiler knew what it meant because he tweeted about it. We also had the context. So apart from Eckenweiler's tweet, which is responding to a big board tweet, so I don't think we know that that's just about conduct. It just seems like—so Fair, the Rumsfeld case, says, the conduct here, all you would know is that the law school is interviewing, holding military recruiter interviews off campus. That could be because the law school is opposed to military recruiting. It could be because the classrooms are full. It could have been the military's choice. A reasonable observer wouldn't know. And it kind of just seems, by pretty direct analogy, maybe it's the restaurant patron's choice. Maybe the tavern thought it's a good business decision. And then there's a long list of other reasons they might not be enforcing a mandate. And one thing on that list would be they opposed the mask mandate. But that's just like Fair. And that would seem to indicate this is not inherently expressive. Sure. But the cultural context adds enough to show that it's expressing a message. I suppose there's a question that the court would have to grapple with if it decided it on this front. Are there allegations about that? Right. So it just seems a matter of common sense. There's a restaurant with not a lot of people wearing masks. Maybe just assume for the moment it's the restaurant's choice. There's a lot of reports about restaurants not wanting confrontation with patrons. About maybe them thinking it's a maybe they just don't care enough. And they're lazy or they want to avoid confrontation and keep patrons happy. It's quite a leap to get to. I can tell from this group of people that the tavern is trying to express a statement here. Isn't it? I suppose that's possible. It seems also that that's guessing at what people would think, which seems like that gets into a fat question as opposed to the pleading question. But even so, understanding the argument in our breach there, we have the speech component, which is probably the clearest path. And then the court wouldn't have to deal with the expressive conduct question. And I think perhaps to Judge Pillard's concern earlier, I know you mentioned the idea of someone being punished for violating a rule. What's wrong with that? It seems like who's punishing and why? Just to keep it counterfactual, if someone was cited for trespassing while blocking a building's entryway during a protest, that wouldn't permit the licensing board to then open an investigation into that protester's business months later for that reason. One of the strongest kinds of evidence to show that the application of the law was for retaliatory reasons rather than for the underlying conduct that was cited as the reason for the protest and the investigation is to look at similarly situated entities. And here are the A and C minutes of the November 9th meeting show that three drinking establishments, there were protests against them and there was inquiry. And those were the three that were along that same stretch of H Street. And all the other ones that weren't in that really busy area were not inquired into. Doesn't that part of the record tend to cut the other way from the inference that you're trying to draw? I'd say, first, I understand D.C. attached that to their wish to dismiss. It wasn't part of the pleading. It's a public record. It's a public record, but we didn't know it at the time of the complaint. And I think there are questions whether the court can rely on not from a judicial nature standpoint. But even so, that goes to facts that, again, the court would have to weigh. And it sounds like if we're talking about evidence, we're talking about summary judgment on what the subjective motivations of those commissioners were if it was retaliatory or for a different reason. It seems like that's an evidence question that's ripe for summary judgment consideration. Is there any reason that we wouldn't take judicial notice? If you've, I mean, there's this question about you've pleaded the actions of that very ANC. And this is a public record about that very ANC meeting. Do you have any reason to think that we couldn't take judicial notice of that or shouldn't take judicial notice of that? I don't know. I'd say at least it's a limited view of what happened with the ANC, given that we don't have the November 7th meetings or transcripts. So they provided a statement. It's not a complete record. It seems like a complete record would be much more helpful for a court to weigh. Right. I mean, you've alleged everything that you are aware of that you think is favorable. Right. Any questions? Judge Chavez? I would just ask, to the extent that you had any deficiencies in your complaint, is there anything else that you can allege? Or is this what we should rely on that you put forward in this complaint? I think given the opportunity, given the additional evidence that may have become available since the chance to replead, if the court was inclined to uphold the dismissal on some ground, but not with prejudice, I certainly wouldn't say no to the chance to replead. However, if on the speech prong, that's enough to reverse right there, it seems like the court wouldn't have to get through that additional analysis. Was the dismissal with prejudice? A judgment was entered immediately following the order of dismissal. Plaintiffs were not given an opportunity to replead. Judgment was entered the same day, if I recall, as the dismissal order. And does it, I believe it doesn't specify whether it's with or without prejudice. I don't believe it says the word prejudice. I believe it says this is a final appealable order, and then judgment followed immediately thereafter. Good morning. Good morning, honors. May it please the court. Chris Mendez on behalf of the commissioners. The big board doesn't plead the causation needed to state a retaliation claim based on the commissioner's unanimous vote to pursue the protest, nor has the big board identified a clearly established rule to defeat qualified immunity. At a minimum, the complaint lacks adequate facts regarding decision-maker knowledge of protected speech by Flannery. The complaint generally references Flannery's tweets, media interviews, and a lawsuit. But that is not enough to state a retaliation claim. With respect to the mentions of the media interviews, there are no factual allegations anywhere to be found in the complaint regarding when those interviews took place, who was the audience, or whether any of the commissioners were ever aware of those interviews. With respect to the lawsuit, there are no factual allegations anywhere in the complaint regarding any of the commissioners' knowledge of a lawsuit, nor does the complaint explain at any point the relevance of the lawsuit to the unanimous vote to protest. Now, as for Flannery's social media activity, there are no factual allegations in the complaint that would suggest that at least five out of the six commissioners had knowledge of those tweets. And as this court noted in Jones v. Bernanke, a retaliation claim requires decision-maker knowledge of the protected speech. Without the knowledge of that speech, retaliation cannot be a plausible cause of the protest. And I do think it's worth spending a little bit of time to discuss the actual factual allegations where the complaint is a little bit more specific. Because what you see there is that speech isn't mentioned at all. Just to give a couple of examples, appendix page 9, paragraph 11, we had my friend on the other side discuss this portion of the complaint a little bit. That's where one of the commissioners, Courtney, allegedly made a statement pushing for the protest because of the big board's bad behavior in recent years. Counsel, I think we could grant that they were pursuing both conduct and speech theory. And the best allegation for them just on speech is the one we've already talked about, which is Eckenweiler saying just some of the things he said publicly, we should go ahead and protest the license. So if we inferred that the majority of the commission was aware of both that statement and Flannery's public statements, do you have an argument that that allegation is not enough to get passed a motion to dismiss? Yes, Your Honor. We do dispute that a reference is appropriate here, but I'll put that to the side now to answer your question, Your Honor. The reason why it's not enough is because I do want to be crystal clear with this meeting. This is a subcommittee meeting that took place on November 7th. The actual commissioner's vote was on November 9th. These are two different groups with different memberships. We're different individuals that are part of the groups. For instance, during the November 9th subcommittee, rather the November 7th subcommittee group, we know at that time was chaired by a private citizen. So this is not the same as the actual commissioner's group that two days later voted to pursue the protest. If we just back up, right? It's a little, would there be more of a smoking gun than someone involved in the decision saying, let's file this because of his speech? Imagine this was an employment discrimination case, and there was a meeting where the person who's driving this decision says, let's not promote that person because he's Black. And the defendant came in and tried to draw these adverse inferences I think we would say that's a smoking gun you get through to discovery. And the government can make all of these defenses. But I mean, I'll try to turn it into a question. But it just feels like a smoking gun from a person who maybe not everyone's there, but this is a person who drove this process. There's certainly allegations to support that, right? Your Honor, I have two reactions to that. The first is what the complaint says is allegedly Eckenweiler during that November 7th subcommittee meeting said something like that they should go ahead and file the process because some of the things he has said, I think it's notable that the complaint there's no specificity whatsoever. One minor exception with respect to what is the actual speech? What are the contents of the speech? When was this speech? And those are details that matter when it comes to a retaliation claim. Premised on protected speech, we just do not know what Eckenweiler is referring to. The complaint just doesn't provide the factual allegations that would even allow for that inference. My second reaction to that, Your Honor, is the fact that there are no factual allegations that would even come close to suggesting that any of the other commissioners were there at the meeting were otherwise aware of what Eckenweiler allegedly said, or whether or not the other commissioners were aware of any protected speech whatsoever. On the part of the big board or Flannery, and I do think it's very notable here that the complaint is very specific with respect to its allegation that Eckenweiler was there. It is very specific with respect to a statement that Eckenweiler allegedly made at the November 7th subcommittee meeting. But the complaint is silent as to the other commissioners, whether they attended the meeting were otherwise aware, as I mentioned. And I really do think that that silence truly speaks volumes because given the fact that Flannery himself acknowledges that he was at that meeting. So if other commissioners were there, or if any of the other commissioners agreed with Eckenweiler's statement, I think we would have seen that in the complaint. Do you disagree? I mean, it doesn't necessarily get to a majority, but do you disagree with Mr. Rosenthal's reading of paragraph 11 of the complaint as suggesting that Drew Courtenoy might have been at the committee meeting? It's ambiguous as to where that quotation comes from. Could have been in the hallway, could have been later, could have been at one of these he might also have been at that committee meeting? I'm not sure, Your Honor. The way I read paragraphs, so on appendix page 9, paragraph 9 to 12, my reading was that it was a reference to the November 9th, the actual meeting that resulted in a vote. I did not read that as being a reference to the November 7th meeting. Wouldn't there be just notation somewhere about minutes or presence of persons at meetings that could be cleaned up in a minute complaint? Your Honor, with respect to the November 7th or the November 9th?  With respect to the November 9th, the commissioners had attached the minutes to the November 9th meeting to its motion to dismiss. And one thing I wanted to flag with those minutes is speech is nowhere to be found there. The minutes identify the three statutory bases as the grounds for the protest in addition to two other businesses who also, or who the commissioners also had moved to file the protest. And with respect to the November 7th meeting, in the reply brief, my friend on the other side, it's emphasizing the fact that there was a factual allegation to complain that suggests that the commissioners had said there is no recording available. I do want to clarify that a bit. There's a few things. I see there's a discrepancy between what the reply brief says and what the actual complaint says. What the complaint says is that the meetings were typically recorded and this was a reference to the November 7th meeting. But the reply brief says that exfoliation, in fact, occurred. And therefore, there needs to be a negative inference levied against the commissioners as a result of that. That seems to me to be a new allegation because the complaint says they usually are recorded. It doesn't say they always are recorded. And in addition to that, a negative reference.  So drawing favorable inferences, right? I think what they would argue is we've alleged what we know. And paragraph 45 says the committee claims no meeting notes or recordings exist for that November 7th. You don't have to get into exfoliation to say, well, you know, Ekin Wyler is the one who spoke up. And maybe you would assume there's at least other people on the line. The next allegation is that nobody spoke up to disagree with Ekin Wyler. And so he doesn't know. He was on WebEx. He doesn't know everyone else who was in that meeting. But he should get to discovery to find out who was there. And did the felons try to get additional information? Yeah. I think where that falls short is the fact that Flannery himself was there. And he has a purported direct quotation from one of the commissioners. So I just think that the silence on whether any of the other commissioners were there, and especially whether any of the other commissioners indicated agreement, pushed back, or did it? I think that is just the gaping hole in the factual allegations here. The other piece of their affirmative argument is sort of that there's these three stated reasons. And then the board finds that it can't substantiate those. And then eventually the committee withdraws the protest. And they argue that that shows it is those stated reasons are at least plausibly pretextual. At least they were flimsy. What's your response to that? I don't think that's right. Much of this argument, as I read the complaint, is premised on the ABCRA, or then what was called the ABCRA's investigation, which occurred nearly four months after the protest, and during which it determined that there were no violations of the three statutory grounds. I think the problem with that argument there, in terms of it showing any pretext here, one of the problems is the fact that the big board had nearly four months to clean up and fix whatever issues there were. So I'm not sure it says anything on that at all. And then when you look at the other facts. The investigation is finding sort of no ongoing violation based on their site visit. Yes, the site visit. Something else had happened in the past. My understanding is it was eight site visits. It was, I believe the first one was February 16th, mid-February, towards the end of February. They found no violations during that time. There's no allegations that there were any other investigations that had occurred before then. So what we have is a nearly four-month gap between the vote to protest, the subsequent filing to protest, and then the investigators taking a look at the big board, what was going on. So I'm not sure that says anything about pretext. Given that the big board was well on notice beginning on November 9th that there was going to be a protest and had nearly four months to fix whatever issues they might have had at that time. My friend on the other side also focuses on the settlement negotiations, on the written protest bases to try to say this was about speech. But I think where that argument falls short is those factual allegations have nothing to do whatsoever with speech. It's seemingly, for instance, Eckenweiler's discussions with Flannery and the attorneys from the other side. If it was true that the motivating factor was speech, one would expect to see the actual discussions perhaps after the protest have something to do with speech. Instead, they didn't seem to be consistent with the November 12th written protest bases. So one of the arguments, and this hasn't been argued by the plaintiffs, but do you have a position on if they raised sort of a cat's paw theory that Eckenweiler was the one who cared? And assuming that we treat the comment that was pleaded, which was some of the things he said, and Eckenweiler knows exactly what Flannery said because the two of them were involved in a heated back and forth on social media about Flannery's position on COVID precautions and Mr. Eckenweiler's strong disagreement with those. If Eckenweiler, for retaliatory speech-based reasons, formulated a conviction that this guy deserves to be punished for his speech, and he just moves in the general body for a protest to be filed against the big board, and he says, you know, the ordinary reasons, the permissible reasons, it's property values, noise, traffic, let's just put him on the list, isn't that enough to establish causation, even if the other five members have no separate conviction or knowledge or dog in that fight. They're just like, fine, we take that recommendation, go with it. Is that a First Amendment violation? Is that First Amendment activity being a cause, a substantial motivating cause? And if not, why not? No, Your Honor, for lack of decision-maker knowledge, especially since Eckenweiler was not deciding votes. So I think we need to look at what the actual claim is. So these are individual, so the commissioners are each suited in individual capacities, so we need to look at the knowledge, right? And whether each one of them had a retaliatory motive, given that they were suited in their individual capacities. But they just ratified without any independent information about the proffered reason. They just ratified what Eckenweiler said. Not a problem? They still have a problem with causation, given that for causation, any retaliatory motive, and we do dispute that they have plausibly alleged that Eckenweiler had a retaliatory motive. But even if this court were to assume that Eckenweiler had the retaliatory motive, they're still far short for lack of causation because he was not the deciding vote. Ultimately, what is being challenged here aren't the individual votes of the commissioners. It is a collective vote from the body, a six-member vote. In fact, my friend on the other side has repeatedly disavowed the notion that there is any independent retaliation claim that is premised on Eckenweiler's allegedly retaliatory motive. Where have they disavowed that? They disavowed that in the reply brief. I believe it's pages 24 to 26, if I'm not mistaken. Oh, Your Honor, I was just going to say the way that my friend on the other side characterized the Flannery's allegedly, rather, Eckenweiler's allegedly retaliatory motive is as evidence of retaliatory motive that should be imputed as to the entire group. Does the record reflect how many commissioners are on this subcommittee? It does not reflect. The only information we have on the record with respect to the members, or actually the membership in the record regarding the subcommittee is at that time a private citizen. His last name was O'Neill, was on that subcommittee on November 7, 2022. I don't believe there's any other indication with respect to the other, who is, what the membership is of that subcommittee. And, Your Honors, I do want to briefly bring up the question of qualified immunity, which is something both parties have briefed. With respect to qualified immunity, if this court were not persuaded, with respect to the constitutional violation of the course, we submit that we went for failure to state a First Amendment retaliation claim. But as an alternative, if this court were not persuaded on those grounds, qualified immunity provides alternative grounds to affirm the district court's decision. This court can consider qualified immunity, even though the district court didn't, under Denova review, given that this court exercises independent judgment, the big board hasn't met its burden to identify a controlling case or consensus of cases that would have put the issue beyond its view. In fact, the big board. I mean, this is one of those cases where, and this is a tough area of the law, as I know you're aware, when there's a state of mind aspect, when somebody's acting based on someone else's speech, the dislike of a regulated party's speech has clearly established that any material action, if there's an adverse action taken by someone in an elected official position against a regulated party because of that party's speech, and the speech is not evidence of unlawfulness, it is not itself something that's constitutionally rendered unlawful, that that's clearly established, right? Absolutely not, Your Honor. I think we have to look at it. It is ultimately the big board's burden to show clearly established law. They have to meet that burden. What about like NRA versus Voolo? I mean, the use of, you know, Supreme Court case about New York officials going after the NRA because of its communications, they don't like its position. And First Amendment violation, why isn't that established? But I think the way that my friend on the other side in the reply brief, and I'm looking at page five, has framed what the clearly established law is, it's far too generalized. In fact, not only is it far too generalized, but this court in Duport has rejected the notion that the right to be free for retaliation for protected speech, which is how I read their assertion of clearly established law in page five of the reply brief, that is far too generalized. And this court in Duport noted that that precise framing nearly, it's almost identical if you compare the way they frame it with the court's analysis of rejecting that. Its analysis where? In the Duport case. In Duport? Yes. It is far too generalized. Just to give an example of the type of clearly established law that would be at the right level of specificity here would be one in which you have a multi-member voting body that is found to have alleged, that is found to have violated the First Amendment where one member allegedly had a retaliatory motive that the other members. Right. So this is my question about this. You're just building in the factual, your factual argument. Qualified immunity is for when the legal principles are not clearly established. So for us to even start thinking about qualified immunity in this case, we have to disagree with all your arguments about the facts. We have to conclude here's a complaint that plausibly alleges that a governmental entity filed a protest against a private business because of its protected First Amendment speech. What is the legal principle that is not clearly established that the plaintiffs need to show to show that violates the First Amendment? I think it comes down to what the complaint is or rather what the claim is. It's a claim against the collective group, the board. But we would have to agree this committee, the committee decided to file a law, a protest because of their protected speech. A qualified immunity argument would look like maybe something Judge Pillard might have been hinting at, which was this is just a protest. They don't really have regulatory authority. Maybe it's not clearly established that using this kind of governmental mechanism violates the First Amendment. But that's not the argument you've made, at least in your appellate brief. You just say the facts are unclear. And so I do think this is actually why so many cases say you decide qualified immunity at summary judgment, because it's not for factual disputes. It's for legal ambiguity. I think what you would need is is a case where where there are no factual allegations that the deciding like like the decider or at least enough of the of the commissioners that would, you know, would have given another result that they knew that. I think that's the problem here. There's no factual allegations that at least five of the six commissioners had any knowledge of speech. So I think you would have to look for what a case like that where there was still a First Amendment violation, even though the majority, not only majority, a super majority of that voting body per the complaint, there are no factual allegations that had any awareness whatsoever of any protected speech. That's the type of case you'd be looking for. One of the things this is a little bit of it. Do you want to follow up on this? It's a little bit of a distinct question. Your brief points out that it would have been legitimate for government to act against the big board based on its noncompliance with the mask and vaccine mandate. And that some of the distaste for the big boards resistance during this period of time was therefore non-speech and completely legitimate. But this alcohol licensing subcommittee and the ANC generally doesn't have any authority to act to enforce the mayor's orders on COVID, does it? Your Honor, respectfully, I'm not sure that's quite what we were saying that this would have been like legitimate. I think what our point actually was is when you look at the factual allegations throughout the complaint, they generally are extremely broad, conclusory. We just do not have the requisite facts that you need to sustain this type of retaliation claim. And then I think our point that was essentially like step one. The step two, the point that we're trying to make is in the areas of the complaint in which there are factual allegations a little bit more specific, those don't point to any speech. They don't suggest that this was because of any speech. At most, they seem to suggest that perhaps this is because of unprotected conduct in defying the emergency orders and the health measures. But that isn't enough to create or that isn't enough to plausibly state a retaliation claim given that there is a consensus throughout this country that defying vaccination and COVID-19 orders in the context of the pandemic is an inherently expressive speech that falls within the ambit of the First Amendment. I think that's what we were trying to say, Your Honor, if that answers your question. Your Honors, if there are no further questions, I respectfully request that this Court affirm the District Court's dismissal of the complaint. Thank you, Your Honors. Thank you. Mr. Rosenthal, you have two minutes for rebuttal. Thank you, Your Honor. I'll be brief. The only information in the record supports speech as motive. This is the quintessential smoking gun alleging at the pleading stage that the license protest was due to speech. You don't have to make any inferences. You can take Eckenweiler at face value. He protested the license because of speech. All the commissioners voted in lockstep, appointed him as the commission's representative to lead the protest. We can take him at his word. This was because of speech. There's nothing further. Thank you. Case is submitted.
judges: Pillard; Childs; Garcia